T. R. WITTHAUER, Appellee, v. W. W. WHEELER, Appellant.

**EVIDENCE: Written Contract—Parol Evidence to Vary, Add to, Etc.**
1 —Application of Rule—Distinction. The rule that prior and contemporaneous oral agreements are inadmissible to vary, add to, or contradict a valid, clear, definite, and complete written agreement is not violated by evidence showing an oral agreement *which merely adds to the written agreement without changing any of the rights or obligations fixed by the written agreement.*

PRINCIPLE APPLIED: Defendant leased to plaintiff, in writing, for two years, a 2,400-acre ranch, only 200 acres of which were under fence and cultivation, "to be used solely as a farm and stock ranch," fixed the crop rent, and made no mention as to any agreement between the parties jointly conducting the business of stock raising. *Held,* not to exclude oral evidence of an agreement entered into prior to the execution of the written lease that, in consideration of plaintiff's entering into said written lease, defendant. would stock the ranch with certain cattle, the parties to share equally in the increase of said stock—said oral agreement not being inconsistent with the written lease and being on a subject-matter as to which the written lease was silent.

**STATUTE OF FRAUDS: Contracts Not to Be Performed Within One**
2 Year. Contracts "not to be performed within one year from the making thereof", within the statute of frauds, apply only to those contracts not to be performed by either party within one year.

PRINCIPLE APPLIED: Defendant, in writing, leased his farm to plaintiff for two years. An oral agreement, entered into before the execution of the lease, required defendant to stock the farm, he and plaintiff to share equally the increase from the stock. *Held,* not within the statute of frauds, as defendant was to furnish the stock during the first season, within one year.

**APPEAL AND ERROR: Immaterial Evidence—Not Controlling Ver-**
3 dict. The erroneous reception of evidence not going to any matter in issue, but in no degree controlling the verdict as rendered, is error without prejudice.

PRINCIPLE APPLIED: Plaintiff sought to recover (1) the damages by way of profits which would have come from the increase of stock which defendant had failed to place in plaintiff's keeping as agreed, and also (2) for time spent in hauling water, fixing a pump and making repairs. He introduced, over objection, evidence of the value of his own time and that of his son. The written contract provided that the plaintiff should make said repairs as part of his contract. For fixing the pump, he had been paid. As to hauling water, the value of the services was wholly indefinite. The instructions as to the measure of damages only permitted recovery for the lost profits and nothing for the personal services of plaintiff or his son. *Held*, the reception of the immaterial and incompetent evidence was non-prejudicial.

**EVIDENCE: Competency—Opinion.** A question whether it was possible for plaintiff, under certain conditions, to have remained upon a farm, leased of defendant, without the cattle which defendant had agreed to furnish, but did not, called for a fact and not an opinion and was competent as a circumstance in the case and as bearing on a surrender of the lease and an alleged settlement in connection therewith.

**COMPROMISE AND SETTLEMENT: Evidence—Jury Question.** Evidence reviewed and held to present a question for the jury on question of compromise and settlement.

*Appeal from Shelby District Court.*—HON. O. D. WHEELER, Judge.

FRIDAY, DECEMBER 18, 1914.

REHEARING DENIED TUESDAY, OCTOBER 19, 1915.

ACTION for damages for breach of contract to furnish cattle to be kept for share of increase on a ranch leased by plaintiff from defendant, and for damages resulting from a failure of the landlord to furnish water supply. From a verdict and judgment for plaintiff, the defendant appeals.— *Affirmed.*

*Byers & Byers* and *Clark, Byers & Hutchinson,* for appellant.

*Kimball & Peterson* and *Edward S. White,* for appellee.

WITHROW, J.—I. The defendant, as the owner of a ranch of 2,400 acres in Colorado, entered into negotiations with the plaintiff, as a result of which, lease was made between the parties in March, 1910. The lease covered a period of two years from March 1, 1910, and provided for a crop rent of one third. It was stated in the instrument that the premises were to be used as a farm and a stock ranch, and for no other purpose, and was stipulated that, if sale was made of the premises before March 1, 1911, the tenant would not be required to pay rent. There were also conditions as to repairs upon the premises, which have bearing upon one branch of the case as brought, and which will, in that connection, be stated. The cause of action, as claimed by plaintiff, is that on or before March 10, 1910, the defendant orally agreed with him that if plaintiff would enter into a written lease for the Colorado ranch, the defendant would stock the same; that he would place upon the ranch at least two carloads of Hereford heifers and one bull, and that plaintiff should have one half of the increase derived from said cattle, in consideration of his feeding, caring for and keeping them. He pleads that, in pursuance of such verbal contract, the plaintiff signed the lease, sold his property in Iowa at a sacrifice and with his family moved out to the ranch; that he raised large quantities of grass, pasturage, and crops, and was at all times able, ready and willing to perform all the terms of his contract; but that the defendant failed, neglected and refused to furnish or place said cattle on the ranch as agreed, to his damage in the sum of $5,000.00.

In another count of the petition, the plaintiff pleads the lease, and a failure by the defendant to maintain the premises in a proper and suitable manner; that the well and windmill upon which plaintiff depended for water were not sufficient or in condition to supply him with water, and he was obliged to haul water, and expend time, money and labor in so doing, and in fixing the well. He pleads that, under the lease, it was the duty of the defendant to furnish all material neces-

sary to keep the fences and buildings in good repair, but that he failed to so do, and the same were untenantable, and that, by reason of such matters, plaintiff was unable to remain upon the premises and carry out the terms of the lease, and was obliged to expend time and money in making repairs, to his damage in the sum of $200.00.

The answer of the defendant admits the execution of the written lease. It further pleads that in October, 1910, plaintiff and defendant made full settlement of all matters growing out of the leasing of the premises, and that plaintiff surrendered the lease and abandoned the ranch. It is denied that any other contract or agreement was made with reference to the premises than that which is shown by the written lease.

The trial resulted in a verdict and judgment for the plaintiff, and the defendant appeals.

II. Against the objections of the defendant, this appellant, evidence was admitted of conversations between the parties prior to the execution of the written lease, which, as claimed, resulted in an agreement between them that appellant was to stock the ranch with cattle, which were to be cared for by the appellee, and the increase of the same was to be divided between them. In addition to the testimony of conversations were many letters written by the appellant to the appellee, some before and others after the execution of the written lease, in which this matter was referred to; and from these statements, if competent evidence, there was full support for the finding of the jury, which necessarily inhered in the verdict returned, that an agreement to that effect was entered into between the parties preliminary to signing the written lease.

1. EVIDENCE: written contract: parol evidence to vary, add to, etc.: application of rule: distinction.

The introduction of this evidence, over the objection that it was incompetent as tending to vary the terms of a written contract, and that, by the execution of the written lease, all prior or contemporaneous oral agreements were merged in it, is made the basis of many assignments of error.

They raise the question of first importance in the case. But while the rule that parol evidence cannot be admitted to vary, contradict or change the terms of a written contract is of general recognition, *Canfield Lumber Co. v. Kint*, 148 Iowa 207; *Wells v. Hocking Valley Coal Co.*, 137 Iowa 526, 542; *Mt. Vernon Stone Co. v. Sheely*, 114 Iowa 313; *Harvey v. Henry*, 108 Iowa 168, and *Murdy v. Skyles*, 101 Iowa 549, are but a few of the cases decided by this court in which the following distinction is noted: If the effect of offered testimony is to ingraft upon the written contract a condition or provision in conflict with its terms, then the general rule applies that such oral testimony is not competent. But when the same tends to merely add to the agreement to the contract, without changing any of the rights or obligations fixed by the written contract, the admissibility of such testimony is recognized.

The lease which was executed covered 2,400 acres of land, less than 200 acres of which, according to the evidence, were fenced and under cultivation. The instrument stated that the leased land was to be used as a farm and stock ranch, and fixed the part of the crop product which was to be set apart to the landlord as rent. In it was no reference to any agreement between the parties as to jointly conducting the business of raising stock, nor was there any condition or requirement of the lease which would be in any way affected by proof of such an agreement, unless it be that which provided for the amount of rent which should be paid. But whatever the result of the stock venture, were it undertaken, it could not change any of the obligations of the written contract of lease, but was in its very nature independent of them. The landlord was bound by it to do certain things; likewise the tenant was charged with the payment of rent as a share of the crops, and with other duties and obligations, and as to neither party would any change in such rights or duties arise in performing the parol contract. In this respect lies the difference and the exception which brings the case

outside the rule relied upon by the appellant, and in support of which, as claimed to be particularly applicable to this case, are cited *Lerch v. Times Co.*, 91 Iowa 750; *Kelly v. Chicago, M. & St. P. R. Co.*, 93 Iowa 436; and *Jessup v. Chicago & N. W. R. Co.*, 99 Iowa 189. The first of the cited cases was an action on a lease to recover rent, in defense of which was pleaded a prior oral agreement between the parties that there was an agreement to put steam heat in the building, and a failure to do so; and the defense was treated in the case as though fraud were pleaded. It was held that it presented in a law action a breach of an oral contract, not as a counter-claim, but as a defense to an action on a written lease, and that it could not be done. It was also stated that the pleading practically changed the terms of the written agreement. The *Kelly* case was an action for damages for breach of contract, for overcharges on freight, based upon an alleged oral contract, preceding a lease of premises for hotel purposes, under which, as claimed, it was agreed by the defendant that it would transport free of charge all supplies needed for the hotel. The lease provided for an annual rental of one dollar. This court held that parol evidence to vary the terms of the lease could not be received; that the previous agreement was merged in the written lease; that the plaintiff might have refused to accept the lease in the terms offered by the written instrument, and rely upon the oral contract; and that he would not be permitted to prove other and different considerations. That which was relied upon in support of the parol agreement went directly to the consideration of the lease, and it was there held it could not be done. While apparently an authority supporting appellant's contention, it rests upon a basis not arising here. There the contract as to free freight transportation was one of the conditions relied upon as creating an obligation against the lessor, part of that which was to be done by it as consideration for the rent to be paid and the operation by the lessee of the railroad hotel

and eating· house.    Here, the rent to be paid was definitely fixed, without relation to the cattle contract; and, as we have already stated, neither the consideration nor any of the terms of the written lease was affected by the other agreement, which was an independent one.

The *Jessup* case arose out of a claim for personal injury and settlement for it.    An agreement of settlement was made in writing.    The plaintiff sued upon an oral agreement of employment made prior to the written settlement, which oral agreement was alleged to have been made in consideration of a settlement of a claim for injuries while in the employment of the defendant.    It was held that, in the absence of a showing of fraud or mistake, the written agreement must control; it was apparent that the oral agreements led up to and became a part of the contract which was finally reduced to writing.    The case is not controlling here.

The later decisions of this court, to which we have already referred, permit proof of an oral contract, under the rule approved in *Harvey v. Henry, supra,* when it shows "the existence of any separate oral agreement as to any matter·on which a document is silent, and which is not inconsistent with its terms, if, from the circumstances of the case, the court infers that the parties did not intend the document to be a complete and final statement of the whole transaction between them."    *Miller v. Morine,* 167 Iowa 287, is in principle the same as the *Lerch* case, *supra,* and is not in conflict with the rule last stated.

The evidence which was objected to, we think, was competent as tending to show an agreement which did not vary or affect any of the terms of the written lease but was beyond and independent of it; and in admitting it, and in the instructions to the jury upon that theory of the case, there was no error.

III. There is no merit in the contention that, assuming proof of a parol contract to be competent for the reasons

claimed, it was yet incompetent as tending to prove a contract

2. STATUTE OF
FRAUDS : con-
tracts not to
be performed
within one
year.

not to be performed within one year, and was therefore within the prohibition of the statute of frauds. If the contract to furnish the cattle was entered into, by its terms, such was to be done during the season, and within a reasonable time after the commencement of occupancy under the lease; in other words, performance on the part of the appellant was required to be within one year. *Sauser v. Kearney*, 147 Iowa 335.

IV. During the examination of plaintiff as a witness, he was asked and permitted to state the value of the time of his son, a boy nineteen years old, in the country at that time.

3. APPEAL AND
ERROR : imma-
terial evidence
not control-
ling verdict.

He also, in answer to a similar question as to himself, was permitted to give the value of his own time as a ranchman with a team during 1910. To both lines of questions, objections were made as being incompetent and immaterial, which were overruled, and error is now claimed. Even though it should be claimed that evidence of that character would be competent under the issues as submitted, as bearing upon the damages for the breach of the contract to furnish the cattle, to the care of which, as shown by the evidence, it was contemplated that the services of father and son should be given, it would, as to that branch of the case, be subject to the objection made. It did not, by question or answer, call for the value of services which would have been but were not rendered, as separate from the labor which the parties would and did give in conducting the farm and raising and caring for its crops. Unless admissible as being relevant to that branch of the case covered by the other count, we should hold the ruling erroneous.

The claim in that count was for expenditures made and labor performed in fixing the well, and in making repairs and for hauling water. The contract of lease provided that the lessee should do the work necessary to keep the fences

and buildings in repair, the landlord to furnish the material. It appears from 'the evidence that whatever services were rendered by the appellee in the repair of the well and pump were paid for by the appellant; and the only other claim under that count as allowed to be considered by the trial court was for the value of services in hauling water if certain necessary facts were established. An examination of the proof shows it to be so indefinite as to the amount of time spent by the son in such work as to afford no basis for calculation. As to the father, it appears in the evidence that he hauled water at intervals from the 1st of April until May 16th, a little while in June or July, and about three weeks in August, hauling three days out of the week, and he stated that the time of himself and team for so doing was worth $4.00 a day. While, from this evidence, the jury might ascertain the reasonable value of the time so used by the appellee, that does not reach to the testimony given as to the value of his time on the ranch, which was independent of that which related to hauling water.

But it is claimed that, in submitting the case to the jury, the trial court only allowed to be considered as damages for the breach of the contract that which the evidence showed as the profits which would have resulted to the plaintiff from that source; and that the evidence as to the value of services was, therefore, without prejudice, even though erroneously admitted. This court has held in *Cox v. Klein,* 147 Iowa 353, and in *Barger v. Brown,* 161 Iowa 656, cases cited by the appellee, that there was no prejudicial error in admitting testimony which did not go to a question at issue. That rule is based upon the further one that it must appear that the result would have been the same if the evidence had been excluded. *Brayley v. Ross,* 33 Iowa 505; *Belair v. Chicago & N. W. R. Co.,* 43 Iowa 662; *Hubbard v. Mason City,* 60 Iowa 400.

The instruction as to the measure of damages for the breach of the contract allowed recovery only of that which

the evidence showed would be the profits, and did not include as an element the value of the personal services of the plaintiff or his son. Under that instruction, whatever services would have been rendered would be compensated in the profits, if any; and if there were none, they would have been uncompensated, their value having no bearing upon the right or amount of recovery. While the evidence was erroneously admitted, we think it clear that no prejudice resulted from it.

V. In his re-direct examination, the plaintiff was asked, ("What do you say as to whether it would have been possible for you to have remained there during the rest of the time under the conditions as they were, without the cattle?"—to which he answered that he could not have done so. The question was objected to as incompetent, calling for an opinion, and as leading. The question called for a fact, rather than an opinion, as to whether the plaintiff could do a thing under existing conditions. In admitting the answer over the objection, there was no reversible error. It is claimed, however, that it was incompetent and immaterial, because the real question was as to the contract, its breach and the damages. The objection that it was immaterial was not made at the trial. We think it was competent, not only as a circumstance in the case, but also as bearing upon the surrender of the lease and the settlement which is claimed by the appellant to have been made, and which is pleaded as a bar to any recovery for alleged breach of contract.

4. EVIDENCE: competency: opinion.

VI. Prior to October, 1910, the plaintiff had determined to leave the farm. There had been correspondence between the parties, and appellant was advised of such intention. In the month of October, appellant called at the farm and met Mrs. Witthauer, her husband being away. The appellant testified that he left with her a paper signed by himself, consenting to the sale of the crops upon surrender of the lease, and giving to the purchaser the right to put his stock in the field to

5. COMPROMISE AND SETTLEMENT: evidence: jury question.

consume the crop. He also testified that he told her he was willing to consent to the sale of the crop, and that if they would consent to leave the ranch and surrender the lease, he would give them all the crops for 1910, and the money he had sent them; that they were to exchange receipts in full for all demands. He said he was to leave them at the bank, and that he did leave there his own receipt in full for crop rent, releasing the tenant from crop rent and further obligation under the lease, upon surrender of the lease.

Mrs. Witthauer testified that, at the time the appellant was at the house, he had only the paper permitting the sale of the crop; that there was no conversation about other papers than that. Witthauer testified that he signed no receipt, and none purporting to bear his signature was introduced in evidence. He sold the crop to one Moore, and showed to him a paper similar in terms, but not identical with the one showed to Mrs. Witthauer, which had been given to him by the banker who was, in some matters, representing Wheeler. The second paper provided for the delivery of the lease, and this he testified was not done because he did not have it. He said he sold the crop in pursuance of the talk had at his home between Wheeler and Mrs. Witthauer.

The claim of the appellant is that the facts show a settlement which covered all demands of the parties, and that, under the instructions of the court on that subject, the jury was bound to find for the defendant. We cannot so read the record. There was dispute in the testimony of Wheeler and Mrs. Witthauer as to what was said at the house. If her version of it was correct, there was no requirement that receipts in full should be exchanged. This was a qestion of fact, and whether or not a settlement was made as claimed was for the jury.

VII. Error is urged in the submission to the jury of what was designated in the petition as Count 3, which was one of the two counts on which the case was tried. That count was based upon the allegation that the defendant was,

under the lease, bound to keep the fences and buildings in good repair, that they were untenantable, and that plaintiff was obliged to expend time and money in fixing up the premises and buildings; that the well and windmill were in bad condition, and plaintiff was obliged to haul water, and to expend time and money in repairing the well and windmill. On this question, the trial court instructed that the defendant was under no obligations to do other than to furnish such repairs as were necessary; that there was no express or implied warranty as to the condition of the well, and that the tenant took it with such facilities for obtaining water as existed at the time; and that, under the lease, it was the duty of the tenant to perform the labor necessary to make the repairs on the pump. It also instructed that, if the defendant failed to procure the repairs necessary to fix the well and windmill, within a reasonable time, and plaintiff could not procure them at a reasonable outlay, then he would be entitled to recover the reasonable value of the time and labor in hauling water for his family and stock. Instructions given also permitted recovery for materials furnished necessary for other repairs, if it was found that the defendant failed to furnish such and the plaintiff was obliged to do so. Upon both of these propositions, we think there was evidence which required the issue to be determined by the jury.

We find no reversible error, and the judgment is—*Affirmed.*

LADD, C. J., DEEMER and GAYNOR, JJ., concur.