PHILIP G. VROOM v. THE BOARD OF EDUCATION OF BAYONNE.

Argued June Term, 1909—Decided November 8, 1909.

1. Although a teacher in the public schools is retired under the act of 1907 without having had a hearing, the proceedings will not be set aside on *certiorari* where the facts on which the retirement was based are conceded.
2. A rule of the board of education that public school teachers should hold their positions during good conduct and efficiency does not become a term of the contract of hiring unless made so expressly.
3. A contract by a board of education with a public school teacher that he should hold his position during good conduct and efficiency would be invalid in the absence of statutory authority to make such a contract.

On *certiorari*.

Before Justice SWAYZE.

For the prosecutor, *Charles W. Fuller.*

For the defendant, *Elmer W. Demarest.*

The opinion of the court was delivered by

SWAYZE, J. The prosecutor seeks to set aside a resolution retiring him on half pay pursuant to the act of 1907. *Pamph. L., p.* 286. He claims the protection of the Veterans' act of the same year. *Pamph. L., p.* 37. Since the Pension act was approved May 7th, and the Veteran act March 27th, it is obvious that if there is any inconsistency between them, the act of May 7th must govern us. It is as if the legislature had introduced a proviso in the earlier act making it inapplicable to public school teachers who had been employed thirty-five years.

Although no hearing was given the prosecutor, it is admitted that the facts bring him within the class reached by the act. It would be a useless procedure to compel the board of education to prove these admitted facts.

The prosecutor further claims that by his contract made thirty-six years ago, it was agreed between him and the then existing board of education that he should hold his position during good conduct and efficiency. The basis for this contention is the fact that the manual of the board of education at that time provided that principals and teachers should hold their positions during good conduct and efficiency. There is no proof that this was made by agreement an express term of the contract, and I have difficulty in holding that a rule of the board adopted for its own guidance became *ipso facto* a term of every contract of employment of a teacher, binding upon every subsequent board. I think it is in the nature of a legislative act rather than a term of a private contract.

Even if this provision were a term of the contract of employment, it cannot help the prosecutor, for as such it would be invalid. At the argument, I suggested that if such were the contract, Vroom would be bound to serve the board of education for life, and the effect would be to place him in a condition of voluntary servitude; such a contract then seemed to me contrary to the policy of our law because in restraint of trade. Upon further examination and consideration, I find that the contract differs from that involved in *Taylor Iron and Steel Co.* v. *Nichols, 3 Buch.* 684, in that it contains

no negative covenant—that is, a covenant not to serve anyone else.

Where there is no negative covenant, the English courts have sustained a contract for service and employment, although it covered the life of the employe. *Wallis* v. *Day*, 2 *M. & W.* 273, and this is said by Mr. Pollock to be clear law. *Poll. Cont.* *314; *Sm. Mast. & S.* *108. A similar view has been taken in Indiana (*Pennsylvania Co.* v. *Dolan*, 6 *Ind. App.* 109); in Iowa (*Jessup* v. *Chicago, &c., R. Co.*, 82 *Iowa* 243), and in Kentucky (*Louisville, &c., R. Co.* v. *Offutt*, 99 *Ky.* 427). Notwithstanding this high authority, I should still doubt the soundness of the rule in that general form or its applicability to a case like this. There is, I think, a distinction between a case where a business has been bought or a claim compromised and part of the consideration is the promise to give permanent employment, and a case like the present, where the contract is a bilateral one, executory on both sides. The French rule which forbids such contracts (*Code Civ.*, § 1780), and the German rule which permits the employe to terminate them after five years by a six months' notice (*Code,* § 624), both seem to me more in harmony with our constitutional provision intended to secure the freedom of the individual. It is, however, unnecessary to pursue this interesting question since I am clear that the contract, if the provision of the manual formed a part of it, would be invalid for another cause. I fail to find any statutory authority for the making of such a contract by the board of education. The charter contemplates annual appropriations for the support of the schools. There is nothing to show that when the contract was originally made there was any appropriation out of which Mr. Vroom's salary could be paid. Obviously, it would have been impossible to make an appropriation to cover payments for so many years in advance dependent upon a contingency so uncertain as human life. The case therefore falls within the rule of *Atlantic City Water Works Co.* v. *Read,* 21 *Vroom* 665, which was followed by this court in *Humphreys* v. *Bayonne,* 26 *Id.* 241.

The resolution is therefore affirmed, with costs.